O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL SYVESTER BLESSITT, JR., <br> Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br> Defendant. | Case No. 5:17-cv-01133-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

On October 15, 2013, Earl Syvester Blessitt, Jr. ("Plaintiff") filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability commencing August 31, 2008. Administrative Record ("AR") 218-28.

On January 28, 2016, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 41-65. At the hearing, Plaintiff amended his alleged onset date to October 15, 2013, and dropped his DIB claim. AR 54.

On March 9, 2016, the ALJ issued a decision denying Plaintiff's SSI

application. AR 27-40. The ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "neuropathy right upper extremity; cervical spine degenerative disc disease; lumbar spine degenerative disc disease; [and] atherosclerosis with central retinal artery occlusion." AR 29. Despite these impairments, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work: he could lift/carry 20 pounds occasionally, 10 pounds frequently; stand/walk for six hours; sit six hours; occasionally climb ramps/stairs, but no ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; could do no work requiring binocular vision; should not work with dangerous machinery or around dangerous machinery or at unprotected heights; and required the use of a cane for balancing when walking. AR 30.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform his past relevant work as a truck driver. AR 33. The ALJ found, however, that Plaintiff could work as a garment bagger, Dictionary of Occupational Titles ("DOT") 582.687-010; bakery worker, DOT 524.687-022; and garment folder, DOT 789.687-066. AR 34. The ALJ concluded that Plaintiff was not disabled. Id.

## II.

## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504

F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

## III.
## ISSUE PRESENTED

Plaintiff's appeal presents the sole issue of whether the ALJ properly evaluated Plaintiff's subjective symptom testimony. (Dkt. 21, Joint Stipulation ["JS"] at 4.)

## IV.
## DISCUSSION

A. **Rules Governing the Evaluation of Subjective Symptom Testimony.**

An ALJ's assessment of pain level is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (citation omitted); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

If the ALJ finds that a claimant's testimony as to the severity of his pain and impairments is unreliable, "the ALJ must make a credibility determination with

findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

Here, the ALJ issued his decision on March 9, 2016. At that time, Social Security Ruling ("SSR") 96-7p had not been superseded by SSR 16-3p (which superseded SSR 96-7p on March 28, 2016). The Court notes that the SSR changes appear immaterial to the ALJ's analysis in this case. Both SSRs note that, in assessing a claimant's subjective symptom testimony, ALJs should consider, in addition to the objective medical evidence: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to

alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Compare SSR 96-7p, 1996 WL 374186, and SSR 16-3p, 2017 WL 5180304; see also 20 CFR § 416.929 (effective to March 26, 2017, reflecting same factors); see also Clowser v. Berryhill, No. 16-2044, 2017 WL 5905506, at *3 (C.D. Cal. Nov. 30, 2017) ("When, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision.").

B. **The ALJ's Evaluation of Plaintiff's Testimony.**

The ALJ found that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's testimony "concerning that intensity, persistence, and limiting effects of these symptoms is not entirely credible." AR 31. The ALJ gave at least five reasons supporting this finding: (1) Plaintiff's sporadic work history; (2) inconsistency between Plaintiff's testimony and the medical evidence, (3) Plaintiff's decision to decline more aggressive pain treatment, (4) Plaintiff's failure to comply with recommended treatment, and (5) lack of support from Plaintiff's longitudinal medical records. AR 31-32.

1. **Reason One: Plaintiff's Work History.**

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented, including information about your work record …." 20 C.F.R. § 416.929(c)(3) (text included in version of statute effective before and after March 27, 2017); see also Thomas, 278 F.3d at 959 (affirming ALJ's finding that claimant's "extremely poor work history … negatively affected her credibility

5

regarding her inability to work.")

Regarding Plaintiff's work history, the ALJ found as follows:

> A review of the claimant's work history prior to the alleged onset date showed the claimant worked sporadically and when he did work, he did not work full-time work, raising a question as to whether his continued unemployment is due to facts other than his alleged medical impairments.

AR 31, citing AR 238 (earnings history from 1986-2015). At the hearing, the ALJ asked Plaintiff why he had so little income in 1990-2006, i.e., years prior to his initial alleged disability onset date in 2008 and years when Plaintiff would have been 24 to 40 years old. AR 46. Plaintiff explained that "it was hard finding a job back then," in part because he had spent time in jail in the 1990s for selling drugs. AR 47-48.

Plaintiff argues that the ALJ "cannot use [his] work history" to evaluate his symptom testimony, because the ALJ is "not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness …." (JS at 8, citing SSR 16-3p and Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017).) In Trevizo, the Ninth Circuit explained that in March 2016, SSR 16-3p superseded SSR 96-7 regarding how the agency evaluates a claimant's subjective symptom complaints. Id. The new SSR, however, was "meant to be consistent with our regulatory language regarding symptom evaluation." Id. (citing SSR 16-3p). As cited above, that regulation—both at the time of the ALJ's decision and now—specifically instructs the ALJ to consider the claimant's work record. See 20 C.F.R. § 416.929(c)(3).

Furthermore, focusing on Plaintiff's work history is not the same as delving into "wide-ranging scrutiny of the claimant's character"—such as, e.g., citing a claimant's past felony conviction as a reason not to believe his subjective symptom testimony. Rather, an "extremely poor work history" that shows little motivation to

work suggests that it is lack of motivation, rather than symptoms, that prevents a claimant from working. See Lester–Mahaffey v. Comm'r of SSA, 640 Fed. App'x 627, 629 (9th Cir. 2016) (finding that ALJ properly considered claimant's limited work history in concluding that claimant appeared to lack motivation to work consistently); see also Urieta v. Berryhill, No. 17-02580, 2018 WL 1187525, at *5 (C.D. Cal. Mar. 7, 2018) ("The ALJ logically inferred that, based on Plaintiff's work history, Plaintiff's impairments may not be the primary reason that she is unemployed.").

### 2. <u>Reason Two</u>:  Inconsistency with Medical Evidence.

At the January 2016 hearing, Plaintiff testified that he had used a cane for "about six years now," so approximately since January 2010. AR 48. He testified that he needs the cane to stand from a seated position and to walk even short distances, such as to the bathroom. AR 49. In April 2014, he wrote in his Function Report, "Left leg goes out – I walk with my cane." AR 298.

The ALJ summarized Plaintiff's testimony, including his testimony concerning his need to use a cane. AR 30. The ALJ then cited the following medical records (see AR 31), all of which post-date January 2010 and none of which indicate that Plaintiff has difficulty walking without a cane:

• <u>May 2010</u>: Plaintiff was hospitalized following another motorcycle accident. AR 341. Plaintiff complained of a possible injury to his right leg, but x-rays showed no leg fractures. Upon discharge, his "pain was well-controlled" and he "was ambulating." Id.; see also AR 366 (checking "yes" to "OOB [out of bed]/Ambulate") and AR 367 ("ambulating").

• <u>August 2012</u>: Plaintiff's primary care physician, Richard Jones, noted, "Gait is described as normal." AR 389.

• <u>October 2012</u>: Plaintiff had a follow-up doctor's appointment two weeks after hernia repair surgery. AR 386. At that time, he was taking medication for back pain but observed to be "in no acute distress." Id. His spine had a normal

7

range of motion, and a "motor examination reveal[ed] normal tone, bulk and strength." Id.

• June 2014: Plaintiff was evaluated for central retinal artery occlusion. AR 454. Under objective findings, cardiologist Dr. Patel noted, "Casual gait is within normal limits." AR 455.

• July and August 2014: Dr. Patel again noted, "Casual gait is within normal limits." AR 456, 458.

• April 2015: Plaintiff went to the emergency room ("ER") complaining of back pain. AR 502. These records say, "no difficulty walking" and "Patient is ambulatory without any difficulties." AR 502, 506. These records also state, "he is driving home and therefore cannot take a narcotic here."[1] AR 506.

• June 2015: Plaintiff went to the ER complaining of a headache and right-side numbness. AR 470. The resulting physical examination revealed "no motor deficits" and "normal inspection; normal range of motion" for his extremities. AR 471. Regarding "dizziness/weakness," the ER staff wrote, "Does not affect activities." AR 470.

Thus, the ALJ's finding—that Plaintiff's testimony regarding needing to use a cane is inconsistent with the medical evidence—is supported by substantial evidence. This was another clear and convincing reason to discount Plaintiff's subjective symptom testimony, even if the ALJ incorporated using a cane into Plaintiff's RFC.

---

[1] At the hearing, Plaintiff testified, "I haven't driven since – I'd say probably 2004." AR 53. When the ALJ questioned him about his motorcycle accidents in 2008 and 2010, he responded, "I won't get another one of those. … I can't even get on" a motorcycle. AR 53-54. In April 2014, he reported on an Exertion Questionnaire that he did not drive. AR 299.

### 3. Reasons Three and Four: Failing to Comply with and Declining Recommended Treatment.

The ALJ noted that in October 2013, Plaintiff declined a spinal injection to treat his back pain due to fears of complications. AR 31, citing AR 368 (stating, "Pt referred and saw pain management recently but pt declined to get injection in the spine due to fear of complications and being paralyzed. Pt reports adequate pain relief on Norco and Soma. Pt denies adverse effect.")

The ALJ also cited medical records indicating that when Plaintiff was referred for carotid Doppler testing, he failed to make the appointment. AR 32, citing AR 435 (Plaintiff told doctor in April 2014 "he will also be having carotid Doppler testing done"), AR 452 (July 2014 note "Did not have carotid Doppler …"). At another appointment in June 2014, the cardiologist noted, "patient does have hypertension and hypercholesterolemia and is on medication. However, the patient disclosed that he is noncompliant with medical treatment." AR 32, citing AR 454.

These were clear and convincing reasons to discount Plaintiff's subjective symptom testimony. A claimant's decision not to follow or receive recommended treatment can be considered in assessing subjective symptom testimony. See 20 C.F.R. § 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled[.]"); Molina, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may proper rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."); Satter v. Colvin, 2016 WL 1226621, at *4 (D. Idaho Mar. 28, 2016) ("[T]he fact that Petitioner may not have followed his medical providers' treatment protocols does not mean ipso facto that he is not entitled to disability benefits; rather, such a circumstance is excused when the reason for not doing so is justified.").

Plaintiff argues that his fear of receiving a spinal injection was reasonable

and justified his refusal. (JS at 14.) Plaintiff cites no evidence concerning the probability of paralysis or other adverse complications resulting from such a procedure. Decisions in other cases involving disability benefits characterize occasional spinal injections to control pain as conservative treatment. Hernandez v. Colvin, No. 15-1431, 2016 U.S. Dist. LEXIS 33512, at *36 (C.D. Cal. Mar. 14, 2016) ("Where a claimant receives epidural injections only as needed and the injections are effective in controlling pain, such injections may constitute conservative treatment."); Chavez v. Colvin, No. 14-1547, 2015 U.S. Dist. LEXIS 138807, 2015 WL 5923537, at *5 (C.D. Cal. Oct. 9, 2015) (finding claimant's care conservative where she responded well to injections that were received on an as-needed basis).

Plaintiff also argues that receiving "adequate" pain relief from medication is not inconsistent with suffering from disabling pain. (JS at 14.) Not so. See Berry, 622 F.3d at 1236 (affirming ALJ's finding that pain "adequately controlled with medications" was not "completely disabling"); Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Pain that is "adequately" controlled is, by definition, not causing significant functional limitations. Thus, the ALJ did not err in relying on Plaintiff's medical non-compliance and refusal of a spinal injection in deciding to discount Plaintiff's subjective symptom testimony.

### 4. Reason Five: Lack of Supporting Medical Evidence.

The ALJ reasoned that the objective medical evidence was insufficient to support the degree of limitations claimed. AR 31. The objective evidence discussed by the ALJ included an EMG/NCV[2] (AR 460), a computed tomography

---

[2] EMG (electromyography) and NCV (nerve conduction velocity) tests are performed to measure the electrical activity of muscles and nerves. (JS at 6 n.2.)

("CT") scan of Plaintiff's cervical spine (AR 542-43), a CT scan of his lumbar spine (AR 512), and another CT scan of his cervical spine (AR 514).  AR 30-32.  Plaintiff argues that pain symptoms "sometimes suggest a greater severity of impairment than can be shown by medical evidence alone." (JS at 14.)  This is true, and it is the reason why ALJs cannot discount claimants' subjective symptom testimony <u>solely</u> due to lack of supporting objective evidence.  <u>Burch</u>, 400 F.3d at 681.  ALJs, however, may consider the lack of supporting objective evidence in combination with other reasons for discounting a claimant's subjective symptom testimony.  <u>Id.</u>

Here, the objective evidence revealed that Plaintiff suffers from degenerative disc disease, but it did not support the degree of impairment Plaintiff claimed.  For example, the cervical spine CT scan performed in December 2014 showed "no evidence for spinal stenosis or neuroforaminal encroachment," conditions associated with pain.  AR 543-43.  The later CT scan of his lumbar spine on April 1, 2015, revealed "minimal, early degenerative disease with no significant spinal stenosis."  AR 512.  These relatively mild findings are inconsistent with Plaintiff's testimony that his pain is so severe even when taking narcotic pain medication that he must spend "half of the day lying down" because "there isn't anything else [he] could do."  AR 56; <u>see also</u> AR 300 ("I rest all day if I could if no pain").

## VI.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: April 17, 2018

e_____
KAREN E. SCOTT
United States Magistrate Judge

11